UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| TERESA E.[1], | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | )   CIVIL NO. 3:22cv731 |
| | ) |
| KILOLO KIJAKAZI, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
|    Defendant. | ) |

OPINION AND ORDER

     This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Disability Benefits under the Social Security Act. Section 405(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing." It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g).

     The law provides that an applicant for disability benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of no less than 12 months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities

---

[1] For privacy purposes, Plaintiff's full name will not be used in this Order.

which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after a hearing, the Administrative Law Judge ("ALJ") made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2020.

2. The claimant has not engaged in substantial gainful activity since September 25,

2

       2018, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*)

3.       The claimant has the following severe impairments: degenerative joint disease; degenerative disc disease of the lumbar spine; chronic obstructive pulmonary disorder (COPD); fibromyalgia; obesity; post traumatic stress disorder (PTSD); depressive disorder; and anxiety disorder (20 CFR 404.1520(c) and 416.920(c)).

4.       The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.       After careful consideration of the entire record, the undersigned finds the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can frequently push or pull, or use foot pedals; can occasionally climb stairs, or ramps, stoop, kneel, crouch, or crawl; can never climb ladders, ropes, or scaffolds, or balance, as that term is used vocationally. Must avoid all exposure to extreme cold, extreme heat, wetness, vibration, and unprotected heights. With occasional exposure to fumes, dusts, odors, gases, poor ventilation, and dangerous moving machinery. With work that can be learned in 30 days, or less, with simple routine tasks, routine workplace changes, simple work-related decisions. Is able to remain on task, persist, and maintain pace in two-hour increments. With occasional interaction with coworkers, supervisors, and the general public.

6.       The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.       The claimant was born on April 21, 1969, and was 49 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963).

8.       The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

9.       Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and

       416.969a).

11.     The claimant has not been under a disability, as defined in the Social Security Act, from September 25, 2018, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 626-650).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to benefits, leading to the present appeal.

Plaintiff filed her opening brief on March 6, 2023. On June 12, 2023 the defendant filed a memorandum in support of the Commissioner's decision to which Plaintiff replied on August 10, 2023. Upon full review of the record in this cause, this court is of the view that the Commissioner's decision should be remanded.

A five step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). In the present

case, Step 5 was the determinative inquiry.

In support of remand, Plaintiff first argues that the ALJ erred by relying on incomplete and unsupported medical opinions. Plaintiff points out that the ALJ chiefly relied on the opinion of the testifying medical expert, Dr. Kwock, who determined that Plaintiff's musculoskeletal impairments did not meet or medically equal a Listing, that Plaintiff could perform light work, and that Plaintiff could engage in occasional to frequent postural maneuvers. (Tr. 674-82.) The ALJ found the opinion "persuasive" because it was "consistent with the record" regarding Plaintiff's orthopedic issues, Dr. Kwock has program knowledge and is a specialist, and he supported his opinion with citations to the record. (Tr. 635.) However, the ALJ added additional restrictions to accommodate Plaintiff's other conditions because Dr. Kwock's opinion was confined solely to a review of Plaintiff's musculoskeletal impairments. (*Id*.; Tr. 674-82.) Plaintiff contends that the ALJ failed to explain how Dr Kwock's opinion was "consistent" with the evidence as a whole.

Dr. Kwock admitted that his opinion did not account for non-musculoskeletal conditions (*e.g*., COPD), which are outside his specialization. (Tr. 679-80.) He also stated that he reviewed only transcript exhibits 1F to 46F (*i.e*., the medical treatment records) (Tr. 674) and based his opinion on "the objective musculoskeletal evidence" in the record (Tr. 679.) Dr. Kwock did not review or account for Plaintiff's or her third-party's statements in forming his opinion.  Plaintiff contends that Dr. Kwock's opinion is also inconsistent with the opinions of the examining physicians, who assessed limitations inconsistent with the light work Dr. Kwock assessed.

The ALJ found "partially persuasive" the opinions of the State Agency medical consultants on Plaintiff's initial and subsequent claims. (Tr. 645-46.) The ALJ found their light

work assessment and postural restrictions "supported" by their comments, "somewhat consistent" with the record, and based on their specialization and program knowledge, but the ALJ ultimately found the opinions lacking as to Plaintiff's respiratory impairments and added restrictions. (*Id*.) Thus, the ALJ acknowledged that these opinions were deficient in considering Plaintiff's respiratory issues. Plaintiff argues that instead of relying on the opinions of examining sources who were aware of Plaintiff's respiratory issues and factored them in, the ALJ assessed environmental restrictions on her own based on abnormal imaging and exam findings. (Tr. 639.) Plaintiff maintains that the ALJ was not qualified to assess the significance of testing regarding Plaintiff's respiratory issues. *See, e.g., Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014) ("ALJs are required to rely on expert opinions instead of determining the significance of particular medical findings themselves."); *Akin v. Berryhill*, 887 F.3d 314, 318 (7th Cir. 2018).

The ALJ rejected consultative examiner Dr. Gupta's opinions because, despite Dr. Gupta's specialization, program knowledge, and examining relationship with Plaintiff, his opinions were "vague," not supported by Dr. Gupta's exam findings, and not consistent with the medical evidence generally. (Tr. 643-45.) Plaintiff claims that the ALJ was not qualified to determine that Dr. Gupta's exam findings do not support his opinions. Dr. Gupta's exams showed obese appearance, wheezing, range of motion deficits and tenderness in the lumbar spine, abnormalities in the left knee and hip, antalgic gait, difficulty standing from sitting, inability to stoop or squat completely, and inability to walk heel to toe and tandemly. (Tr. 428-31, 1376-80.) Plaintiff points out that it is unclear why the ALJ held that these findings contradict Dr. Gupta's opinions that Plaintiff cannot walk for prolonged periods due to pain, range of motion issues, and stiffness. (*Id*.) Plaintiff notes that Dr. Gupta supported his opinion with his exam findings and

6

argues that it was not the ALJ's role to supplant her interpretation of the findings for Dr. Gupta's.

Plaintiff also takes issue with the ALJ's rejection of Dr. Kragt's opinions despite her extensive treatment relationship with Plaintiff because her opinions were not supported by sufficient explanation, not consistent with her own records, based on Plaintiff's subjective statements, and "excessive." (Tr. 641-42.) Plaintiff notes that of all the medical sources, Dr. Kragt had the most longitudinal and in-person picture of Plaintiff's symptoms and limitations. She has treated Plaintiff since around 2008 for breathing issues, chronic pain, muscle aches, depression, and anxiety. (Tr. 412-15, 548, 594-97, 1339-48.) Her exams showed moderately ill appearance, cough, coarse breath sounds, and rapid breathing, slow gait, and swelling in the finger joints with osteoarthritic changes. (Tr. 383-92.) Dr. Kragt was provided copies of other providers' observations and testing.

Dr. Kragt cited specific symptoms and findings supporting her opinions, including positive ANA testing, trigger point tenderness consistent with fibromyalgia, findings of osteoarthritic changes in the fingers, hip and knee pain, breathing treatment requirements, severe chronic muscle and joint pain, and a history of failed treatment by several specialists. (Tr. 412-15, 548, 594-97, 1339-41.) All the above supports Dr. Kragt's opinions. 20 C.F.R. § 404.1520c(c)(1). Dr. Kragt's opinion is also consistent with the observations of Plaintiff's other providers, objective testing, and Dr. Gupta's opinion.

This Court agrees with Plaintiff that due to the ALJ's erroneous assessment of the medical opinions, the RFC is not supported by substantial evidence and remand is required.

Plaintiff also argues that the ALJ erred in the assessment of Plaintiff's mental impairments. The ALJ found the State Agency psychological consultants' opinions on Plaintiff's

7

mental impairments to be lacking and assessed greater restrictions except that the ALJ rejected the restriction to "superficial and ongoing" interaction because it was not a vocationally defined term. (Tr. 647-48.) Plaintiff argues that the consultants failed to address the impact of Plaintiff's chronic pain on her mental functioning.

The record shows that Plaintiff endorsed pain at the same time as she reported difficulty sleeping, worry, anxiety, medication side effects (i.e., fatigue, confusion, and difficulty concentrating), depression, frustration, lethargy, helplessness, racing thoughts, panic attacks, and paranoia. (Tr. 416-20, 1136-40, 1371-74.) She was observed to be "moaning or groaning" in pain during a psychiatric evaluation and the exam showed impaired concentration, attention, and memory, fatigued appearance, tearfulness, below average intelligence, and guarded behavior. (Tr. 1136-40.) The ALJ noted that Plaintiff's physical pain would have some impact on her ability to concentrate or maintain pace. (Tr. 631-32.) Plaintiff contends that the consultants' failure to address Plaintiff's chronic pain undermines their opinions.

The ALJ found consultative examiner Dr. Nordstrom's opinion "generally consistent" with the evidence and supported by explanation, as well as by Dr. Nordstrom's specialization and program knowledge. (Tr. 646-47.) However, the ALJ ultimately rejected the opinion because Plaintiff did not bring identification to the exam, so there was "no way to determine who actually appeared at [the exam]." (*Id*.) However, although Plaintiff did not bring identification, she was described by Dr. Nordstrom as 5 feet, 2 inches tall, weighing 190 pounds, with brown hair and blue eyes. (Tr. 1371-74.) Plaintiff points out that the ALJ could have simply asked Plaintiff her height, weight, and hair and eye color at the hearing or asked her to testify under oath that she participated in the exam to confirm with reasonable certainty that it was Plaintiff who attended

the exam—yet, the ALJ did not do so. *See Sims v. Apfel*, 530 U.S. 103, 110-11 (2000) (Social Security proceedings are "inquisitorial rather than adversarial"; ALJs have a duty to "develop the arguments both for and against granting benefits").

Plaintiff argues that the ALJ erred by failing to explain how the RFC accounts for Plaintiff's significant difficulty sustaining attention and concentration, moderate difficulty initiating, sustaining, and completing tasks due to lack of motivation, significant impairment relating to others in the workplace, and significant impairment withstanding usual work pressures due to depression and anxiety. (Tr. 1371-74.)

The ALJ also rejected Dr. Kragt's opinions that Plaintiff would be off task 10 to 25 percent of the workday and absent 3 or more days a month due to her physical and mental conditions. The ALJ held that Dr. Kragt did not explain her conclusions and assessed no mental limitations. (Tr. 412-15, 594-97, 1339-41, 1343-48.) However, as Plaintiff points out, this is a mischaracterization. Dr. Kragt provided support for each of her opinions with citations to specific conditions, symptoms, and objective findings, and also had the benefit of many years of treating Plaintiff and observing her behavior. Additionally, Dr. Kragt specifically noted in her Mental Medial Source Statement that her off task and absenteeism assessments were based on Plaintiff's issues with concentration due to pain. (Tr. 1339-41.) This Court agrees that the ALJ's mischaracterization is not a valid basis to reject Dr. Kragt's conclusions.

Plaintiff next argues that the ALJ erred in her assessment of Plaintiff's ability to sustain concentration, persistence and pace. The ALJ found that Plaintiff is able to remain on task, persist, and maintain pace in two-hour increments. (Tr. 633). Plaintiff contends that this conclusion is not supported by medical evidence. Dr. Nordstrom, whose opinion the ALJ found

generally supported and consistent with the evidence, concluded that Plaintiff has significant difficulty sustaining attention and concentration and moderate difficulty initiating, sustaining, and completing tasks due to lack of motivation secondary to depression. (Tr. 1371-74.) Likewise, Dr. Kragt issued three opinions that Plaintiff would be off task more than 25 percent of the time. (Tr. 412-15, 594-97, 1339-41, 1343-48.) These opinions were based on longitudinal observations of Plaintiff's mental and physical symptoms, including chronic pain, in Dr. Kragt's case, and observation of significantly dysphoric mood, restricted affect, and inability to perform "Serial 7s," in Dr. Nordstrom's case. (Tr. 1371-74.)

Plaintiff argues that the ALJ did not explain how the restriction comports with the ALJ's assessment of a moderate restriction in the "B Criteria" area of concentrating, persisting, and maintaining pace because of Plaintiff's variable ability to pay attention, difficulty finishing tasks, impaired concentration on exams, inability to complete "Serial 7s," anxiousness, and pain, which the ALJ acknowledged would impact Plaintiff's ability to concentrate or maintain pace. (Tr. 631-32.) Other evidence shows that Plaintiff failed digit memory trials and exhibited abnormal mood and affect (Tr. 416-20), was fatigued, tearful, distracted, guarded, exhibited impaired concentration, attention, and memory, had below average intelligence (Tr. 1139-40, 1330), suffers from "constant worry," flashbacks, nightmares, paranoia, medication side effects (*i.e.*, fatigue, confusion, and difficulty concentrating), chronic pain, lethargy, anhedonia, worthlessness, racing thoughts, irritability, agitation, fragmented sleep, panic attacks, and intrusive thoughts (Tr. 416-20, 423-24, 1136-40, 1371-74), can pay attention for 10 minutes and does not finish what she starts (Tr. 340), has more bad days than good days (Tr. 64), and had difficulty comprehending what was going on during the hearing (Tr. 692).

Plaintiff contends that if the ALJ felt that all of the evidence above supported the conclusion that Plaintiff can remain on task, persist, and maintain pace for two hours at a time, the ALJ needed to explain that reasoning. *See Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005) (citing SSR 96-8p, 1996 WL 374184 at *7 (July 2, 1996) ("RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts."). Plaintiff points out that despite assessing a moderate limitation in concentrating, persisting, or maintaining pace and expressly noting that Plaintiff has difficulty concentrating and maintaining pace due to her symptoms, the ALJ failed to make a determination of whether Plaintiff would be off task and absent in excess of accepted tolerances. Thus, remand is warranted.

Next, Plaintiff argues that the ALJ did not explain how the restriction to occasional interaction accommodated her social limitations. The ALJ determined that Plaintiff can occasionally interact with others based generally on the same evidence the ALJ said supported the concentration, persistence, and pace restriction above. (Tr. 633.) However, the ALJ did not elaborate how the evidence supports occasional (*i.e.*, up to 2.6 hours a day) interaction. Plaintiff is anxious around others, becomes easily overwhelmed, suffers from PTSD due to a history of abuse, avoids others due to depression and anxiety, has difficulty trusting, does not like to leave the house, does not get along with authority figures, argues with others, and struggles to express herself. (Tr. 65, 330-31, 340, 417-19, 690, 1078.) Also, Dr. Nordstrom opined that Plaintiff has a significant impairment in relating to coworkers and supervisors due to distrust of others and social withdrawal. (Tr. 1371-74.) Plaintiff maintains that the ALJ was not permitted to simply ignore this portion of Dr. Nordstrom's opinion undermining the RFC. *See Godbey v. Apfel*, 238

11

F.3d 803, 808 (7th Cir. 2000) (ALJ may not address only select portions of a medical source's report).

The Seventh Circuit has held that "even a moderate limitation on responding appropriately to supervisors may undermine seriously a claimant's ability to work." *O'Connor-Spinner*, 627 F.3d at 621; *see also* SSR 85-15, 1985 WL 56857, at *6 (Jan. 1, 1985) ("The mentally impaired may cease to function effectively when facing such demands as getting to work regularly, having their performance supervised, and remaining in the workplace for a full day."). As the RFC is unsupported with respect to Plaintiff's social limitations, remand is required.

## Conclusion

On the basis of the foregoing, the Commissioner's decision is hereby REVERSED and REMANDED for further proceedings consistent with this Opinion.

Entered: August 18, 2023.

s/ William C. Lee<br>
William C. Lee, Judge<br>
United States District Court